RANSOM v. DOLLAR S. S. LINE et al.
No. 20679.

District Court, W. D. Washington, N. D.
Jan. 18, 1933.

See, also, 1 F. Supp. 244.

John M. Boyle, Jr., of Seattle, Wash., for plaintiff.

Bogle, Bogle & Gates, of Seattle, Wash., for defendant Dollar. S. S. Line.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for defendants Nippon Yusen Kaisha S. S. Lines and Matson Nav. Co.

NETERER, District Judge.

The plaintiff, after alleging the corporate relation of the several defendants, says each operated a steamship line as a carrier of passengers and freight for hire: The Dollar Steamship Line between the cities of Seattle, Yokohama, and Honolulu and other ports, and operated the President Taft; the Nippon Yusen Kaisha between Seattle, Yokohama, and Honolulu and other ports, and operated the Taiyo Maru; the Matson Navigation Company between Honolulu, Yokohama, and Seattle and other ports, and operated the steamship Malolo.

On October 7, plaintiff was aboard the steamship Malolo in Yokohama, and had return passage to Honolulu; the Taiyo Maru was about to sail to Yokohama. The plaintiff was removed from the Malolo by stretcher to the Taiyo Maru, accompanied by purser (Fishbeck) and (Grant) executive officer of the Malolo and other employees of the Malolo and was assigned to a stateroom; "that Sidney Albright, passenger agent of the Dollar Steamship Line, entered the room, and thereupon the defendants * * * acting through said agents, imprisoned the plaintiff in the stateroom and * * * there detained her restrained of her liberty and the wrongful charge of insanity connived in with the ship doctor of the 'Taiyo Maru' and * * * combined and conspired * * * among themselves to falsely imprison the plaintiff; * * * the said defendants * * * acting through their agents and officials aforesaid who * * * were acting within their authority and in furtherance of the common design and general plan as afore-

said, * * * removed her from the * * * 'Taiyo Maru' and imprisoned her * * * aboard * * * the 'President Taft,' * * * caused guards to be over her until the said vessel * * * sailed for the port of Seattle at six o'clock on October 7, 1930; that * * * on the 18th of October, 1930, the 'President Taft' arrived at Seattle * * *; that * * * the Dollar Steamship Line, acting through its agents * * * and * * * in furtherance of the common design * * * of all the defendants * * * refused to permit the plaintiff to leave the vessel 'President Taft' as a free citizen and caused her to be taken to the city jail under guard, where she remained restrained of her liberty for three days" and in the end she was released on habeas corpus proceedings.

Motions are directed against the complaint by each of the several defendants, and to strike the complaint, and more particular statements, etc., and demurrers on the grounds that: (a) There is a defect of parties; (b) several causes of action are improperly united; (c) that sufficient facts are not stated to constitute a cause of action.

This matter has been before the court several times and it appears that on this third amended complaint all facts are presumably stated, and disposal may be made as to sufficiency of the facts.

It has been held that a corporation cannot, in contemplation of the common law, be guilty of conspiracy. There is no statute of Washington having relation to such act; nor is a statute of any place where the conspiracy was formed, or acts took place, pleaded. The specific acts charged carrying the plaintiff from one ship to another, accompanied by some of the officers of the ship, assigning the plaintiff to a stateroom, are all acts incidental to transportation of passengers for hire, and such acts for which the employer company are held to regular conduct of their several employees.

█ It may not be said that the employees of one company upon a ship may enter into a conspiracy with the employees of another ship or passenger agent of another ship for treatment of a passenger in the custody of the other ship and formulate conspiracy of their several employers. Conspiracy is not within the scope of their employment. "The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental." Central Transp. Co. v. Pullman's Palace Car Co.,

139 U. S. 24, at page 48, 11 S. Ct. 478, 484, 35 L. Ed. 55. The regular scope of employment is limited to conduct upon the ship and duties fairly incidental, and where it is sought to hold corporations beyond such employment and duties fairly incidental, it must be shown by affirmative acts of the corporation through its properly functioning agency.

█ Malice or unlawful or fraudulent act is the gist of the action of conspiracy. Van Horn v. Van Horn, 52 N. J. Law, 284, 20 A. 485, 10 L. R. A. 184. Simple conspiracy is not actionable. Hutchins v. Hutchins, 7 Hill (N. Y.) 104. Malice may be said to be an intent from which flows any unlawful and injurious act committed without legal justification. It extends to evil design or a corrupt or wicked motive against some one at the time of the act. And this must come from the corporation. To maliciously interfere with and induce another to act injuriously to a third party is actionable. Angle v. Chicago, St. P., etc., R. Co., 151 U. S. 1, 13, 14 S. Ct. 240, 38 L. Ed. 55. There is no allegation in the complaint of any act done by the Matson Navigation Company save and except the carrying of the plaintiff from the steamship Malolo by some members of its crew to the Taiyo Maru, where she was assigned to a stateroom, and thereafter carried from this vessel to the President Taft; and then the conspiracy is charged between the employees to imprison the plaintiff in said room, and that they did so imprison her. The relation of the Malolo to plaintiff ceased when she was accepted by the Taiyo Maru, and of the Taiyo Maru when she was accepted by the President Taft.

The duty of each carrier of plaintiff is separate. There was no joint carriage. The duty of each ended when the duty of the other began by accepting plaintiff as passenger. From the facts stated, the only responsibility of the ship or the steamship company would be for the regularity of the conduct of its own employees during the service rendered to the plaintiff. If the plaintiff was badly treated and damaged, each company is liable for the damages sustained by the plaintiff while in its custody and control, and the acts of one crew of a ship could not be binding and carried over and make liable the company of the other ship upon which the plaintiff had prior or subsequent passage, unless it is specifically shown by pertinent allegations that the irregular acts were directed by the company.

The mere allegation that the employees

conspired and confederated in this stateroom is of no importance, in view of the stated facts. From the language of Judge Gilbert in Puget Sound Power & Light Co. v. Asia et al. (C. C. A.) 277 F. 1, at page 4, in affirming this court in 2 F.(2d) 491, it may be said a broader aspect is attempted to be given to the amended complaint by the allegation that the several employees in this room conspired and combined together for the purpose of imprisoning the plaintiff and to keep her in restraint and do the things charged; and when thus measured by the facts alleged, there is nothing in the complaint other than the charge that the defendants carried the plaintiff, placed her in a stateroom, guarded her there upon the assumption that she was insane, upon the certificate of the ship doctor, who aided and abetted in the conspiracy.

I know of no principle of law, and none is cited, which, upon the facts, if a corporation can conspire, would hold the several steamship companies to a conspiracy. If either company wronged the plaintiff, she has her separate action against either one or all of them, for the injury done, but she may not, upon the allegations in the amended complaint, sue all of the steamship companies in one action and charge each for the derelictions of all.

Demurrers sustained.