CHAMPION SPARK PLUG CO. v. REICH.

No. 11910.

Circuit Court of Appeals, Eighth Circuit.

July 23, 1941.

Wilber Owen, of Toledo, Ohio (Arthur C. Brown, of Kansas City, Mo., and Carl F. Schaffer, of Toledo, Ohio, on the brief), for appellant.

Charles V. Garnett, of Kansas City, Mo. (Charles H. Thompson and Donald W. Johnson, both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The plaintiff in the lower court appeals from that part of a decree denying an injunction to restrain the defendant from acts of unfair competition and trade-mark infringement.

The plaintiff is a manufacturer of spark plugs for use in internal combustion engines, and is also the owner of three registered trade-marks, "Champion", "X", and "Champion X". Its spark plugs, labeled with its trade-marks, are sold throughout the United States and in other countries.

The defendant is a reconditioner of used and discarded spark plugs of various makes which he sells in the channels of trade for use in automobile engines. In the course of his business defendant obtains many such spark plugs originally manufactured

by the plaintiff and after repairing or reconditioning them sells them without removing plaintiff's trade-marks and type numbers.

Two ultimate questions are presented on the appeal: (1) whether injunctive relief must be granted where the court finds defendant guilty, as of the time of the commencement of the action, of conduct constituting unfair competition and trade-mark infringement, but where during the pendency of the action the defendant has in good faith abandoned the practices complained of; and (2) whether the use made of plaintiff's trade-mark and type numbers by defendant in selling his repaired spark plugs constitutes infringement and unfair competition. These questions arise out of the procedural steps taken in the district court and the events occurring while the action was pending. Their determination calls only for an application of the law to the facts found by the court. A brief summary of the proceedings and of the material facts will be sufficient to make the issues clear.

After the action was commenced in the district court plaintiff filed a motion for a preliminary injunction, and a hearing was had thereon. The matter was submitted upon the pleadings and affidavits and testimony taken in open court. On September 24, 1938, the court· filed a memorandum opinion finding that the defendant was guilty of unfair competition and that he had infringed plaintiff's trade-marks. 24 F.Supp. 945. Before an order was entered the defendant filed an amended motion for an order denying preliminary injunction upon condition. By the motion defendant offered to market his reconditioned spark plugs, made originally by the plaintiff, in individual cartons, on the sides of which would be printed in bold type a statement disclosing that the enclosed spark plugs had been repaired by the defendant, but not disclosing the name of the original manufacturer.

By such amended motion defendant offered further to indent in the hex portion of the metal shell of each plug repaired and offered for sale by him the words: "Repaired by A.P. Co.", or their equivalent, in capital letters of equal prominence with the word "Champion" placed by the plaintiff on the insulator of the plug, and to abandon all cartons, display cards and advertising matter previously used by him. The methods of doing business proposed to

be abandoned had all been condemned by the court in its opinion of September 24, 1938.

The defendant then undertook to change his business practices to conform to the offer contained in his amended motion. Under his changed system of doing business defendant abandoned the use of all cartons, display cards and advertising matter formerly used by him. He indented upon the hex portion of each spark plug the words "Repaired by A.P. Co.", and left plaintiff's trade-mark "Champion" on the insulator. He printed the following legend upon the sides of each carton: "Repaired Spark Plug By The Automotive Products Company 3033 Main St. Kansas City Mo. Distributed By (Dealer's Name). This Spark Plug, While Not New, Has Been Restored To Usefulness By The Automotive Products Co., By Which It Has Been Thoroughly Renovated And Repaired. All Worn Parts Of The Electrodes Removed, The Remaining Parts Refinished And Adjusted So As To Make It An Efficient Used Spark Plug. Guaranteed To Give At Least 10,000 Miles Of Satisfactory Service"; and he stamped or printed the plaintiff's trade-mark and type numbers under the words "Repaired Spark Plug", on the end of each carton.

On March 3, 1939, the court wrote a letter to counsel for the parties saying that he had reached the conclusion that defendant's effort to conform to his opinion of September 24, 1938, was in good faith and would entitle him to continue in business without the restraint of a preliminary injunction and suggesting that the case continue to pend without trial for a period of six months, and that if within that time it should be made to appear that defendant's method of operation deceives the public and in actual practice infringes plaintiff's trade-mark a further hearing be had.

On January 2, 1940, the parties entered into a stipulation providing for filing of further affidavits by both parties covering the changed practices of defendant and for the final submission of the cause upon the pleadings, affidavits, evidence produced on the preliminary hearing and the stipulation. The additional affidavits were filed within the times limited in the stipulation, and the parties submitted briefs, proposed findings of fact, and conclusions of law.

On July 16, 1940, the court filed an opinion rejecting certain findings of fact and conclusions of law proposed by the plain-

tiff. D.C., 34 F.Supp. 414, 415. In this opinion the court said:

"It is my conclusion that plaintiff is entitled to a decree as prayed in its bill of complaint, but it is not entitled to an injunction, in view of the present attitude of the defendant. This means that the plaintiff is entitled to a decree upholding its patents and for costs and damages for infringements or unfair competition.

"Therefore, the plaintiff should supply a proposed decree in conformity with its petition and this memorandum opinion, as well as an appropriate recital as to the reason why the injunction should not issue, in view of the defendant's disposition to conform to the ruling of the Court and to refrain from selling its repaired spark plugs in such a way as to deceive the public."

On September 14, 1940, the court filed findings of fact, conclusions of law and entered a decree. The decree declared that plaintiff is the owner of its registered trade-marks and they are valid; that the defendant has infringed said trade-marks, and has unfairly competed with plaintiff in the sale of spark plugs; and "4. That an injunction against Defendant restraining further acts of trade-mark infringement and unfair competition as herein found shall not issue because of changes in Defendant's practices inaugurated subsequent to the date of the entry of the Memorandum Opinion herein on September 24, 1938."

The appeal is from paragraph 4 of the decree.

The plaintiff argues that the court erred in refusing to make certain findings of fact requested by it. In view of the completeness of the findings made by the court and the admissions of counsel for defendant in their written brief in this court, we find it unnecessary to discuss this alleged error of the court separately.

Plaintiff concedes that the defendant has a right to deal in the physical property of discarded spark plugs apart from the trademark "Champion" and to make some collateral use of the word "Champion" in an explanatory statement which discloses the truth as to the origin of the plug and in which such word is not given particular prominence. Plaintiff denies that the printed statements upon defendant's cartons are sufficient to protect its rights.

The practices of defendant which plaintiff contends should be permanently enjoined may be considered in three parts: first, those practices relating to defendant's methods of doing business and advertising which were abandoned after the filing of the opinion of the court on September 24, 1938; second, the continued use by defendant of plaintiff's trade-mark "Champion" on the repaired spark plugs; and, third, the stamping or printing of the trade-mark "Champion" and plaintiff's type numbers on the ends of defendant's cartons.

■■ Plaintiff's claim that it is entitled to a permanent injunction against the first group of practices referred to above is without merit. That contention ignores the rule that a court of equity is not restricted to an adjustment of the rights of the parties as they existed when suit was brought, but will give relief appropriate to events occurring pending the suit. 21 C.J. 137. "Equity acts in the present tense", and molds its "decree to actualities not history." Continental Securities Co. v. Interborough Rapid Transit Co., D.C.N.Y., 207 F. 467, 471, affirmed, 2 Cir., 221 F. 44; 32 C.J. 76, § 63.

■■ When an injunction is sought to restrain a continuing injury and, after suit is brought the defendant claims to have abandoned the course of conduct complained of, the question for the court to determine is whether the illegal conduct has in fact been abated or whether the menace to plaintiff's rights still exists. If the menace exists an injunction should be granted; if not, it should be denied. Goshen Mfg. Co. v. Myers Mfg. Co., 242 U.S. 202, 207, 37 S.Ct. 105, 61 L.Ed. 248; Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161. The question is one of fact for the determination of the court at the time the final decree is entered. In the instant case the court found that the injunction should be denied because subsequent to the filing of the opinion of September 24, 1938, the defendant had in good faith inaugurated such changes in his business practices that he was no longer infringing plaintiff's trade-marks nor engaging in unfair competition. This finding as it applies to the practices now being considered cannot be said to be clearly erroneous. As to these practices there is substantial evidence to support the confidence of the court that the defendant is acting in good faith and that he will not violate his promises nor the ruling of the court. For this reason the denial of a permanent in-

junction against the first group of practices referred to above, and which it is unnecessary to enumerate more particularly, must be affirmed. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c.

Plaintiff's contention that it is entitled to injunctive relief against the second and third classes of practices is more serious. The second practice referred to presents the question whether under the law governing registered trade-marks and the facts found by the court the defendant should be enjoined from selling repaired or reconditioned spark plugs made by plaintiff without first removing its trade-mark "Champion" therefrom.

■ Ordinarily when a manufacturer parts with his goods, and they go upon the market, the purchaser may use them or sell them without removing the trade-mark of the manufacturer. Bourjois & Co. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464, 26 A.L.R. 567; Garst v. Hall & Lyon Co., 179 Mass. 588, 61 N.E. 219, 55 L.R.A. 631; Standard Oil Co. v. California Peach & Fig Growers, D.C. Del., 28 F.2d 283, 285; Vitascope Co. v. United States Phonograph Co., C.C., 83 F. 30; 63 C.J. § 81, page 380.

But the purchaser of the goods does not acquire ownership of the trade-mark; and he cannot sell such goods bearing the manufacturer's trade-mark after he has changed or altered the goods so that they no longer represent the original character and excellence which the trade-mark indicates. Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731; Coca-Cola Co. v. Bennett, 8 Cir., 238 F. 513; Ingersoll v. Doyle, D.C. Mass., 247 F. 620; General Electric Co. v. Re-New Lamp Co., C.C. Mass., 128 F. 154; Auto Acetylene Light Co. v. Prest-O-Lite Co., 6 Cir., 264 F. 810; Champion Spark Plug Co. v. Emener, D.C. Mich., 16 F.Supp. 816, 823. To sell such altered goods without removing the original trade-mark is equivalent to a substitution of the purchaser's goods for those of the manufacturer, and, if unauthorized, is an infringement of the registered trade-mark. Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 961.

■ The owner of the trade-mark cannot complain of the resale of the repaired, altered or changed goods by the purchaser when accompanied with a truthful statement of the source from which they were derived, provided the purchaser does "not use the trade-mark in doing so." Prestonettes, Inc. v. Coty, supra, 264 U.S. at page 368, 44 S.Ct. at page 351, 68 L.Ed. 731.

These rules of trade-mark law need not be elaborated. In the abstract they cannot reasonably be disputed. The controversy involves their application to the facts found by the court. With reference to the changes effected in the spark plugs by defendant's process the court found:

1. "Defendant did not prior to * * * September 24, 1938, and does not now restore his said spark plugs to their original condition and they could not then and cannot now truthfully be referred to as 'reconditioned' plugs nor as 'Champion' plugs of the type number marked thereon by Plaintiff.

2. "The spark plugs which Defendant * * * now stamps as 'Repaired' Champion spark plugs have been so changed in functional features from their original dimensions as they were manufactured and sold by Plaintiff that they have ceased to have several of the distinctive mechanical and functional features which characterize new 'Champion' spark plugs and are in fact no longer 'Champion' spark plugs as that term is used by Plaintiff and known to the motoring public."

3. A patented feature involving the use of flat parallel faces on the adjacent portions of the center and side electrodes of plaintiff's spark plugs "has been entirely destroyed either through long usage or by Defendant's operations."

4. "Another patented feature * * * relating to the shape of the firing end of the insulator, and for which Plaintiff claims important advantages in heat control and regulation between the several portions of the spark plug core", has been destroyed by sandblasting.

5. The skirt or semi-petticoat end of the ceramic insulator, a feature of functional importance in all "Champion" spark plugs, has also "been destroyed in Defendant's spark plugs."

As a conclusion of law the court found: "4. In selling his said spark plugs Defendant must not use Plaintiff's trade-marks or trade-name at all, except collaterally for the purpose of identification of the plugs as of Plaintiff's original manufacture, as distinguished from a designation of the plug by said trade-mark or trade-name. When used collaterally, such trade-mark or

774

trade-name must not be more prominent than the accompanying explanatory content."

■ The court concluded in effect, as shown by the decree, that defendant had complied with the foregoing conclusion of law by stamping upon the hex portion of his spark plugs the words, "Repaired by A.P. Co."; and defendant was not required by the decree to remove the trade-mark "Champion" placed upon the insulator by the plaintiff. We think that under the law and the findings this was error. In view of the radical changes made in the spark plugs by defendant, he should not be permitted to use the trade-mark "Champion" upon his "repaired" spark plugs. This use of the trade-mark is not rendered collateral and explanatory by stamping the word "Repaired" upon the hex of the plugs. Clearly the trade-mark left where it was placed by the plaintiff "indicate[s] the goods" of plaintiff, and "a casual purchaser might look no further and might be deceived." Prestonettes, Inc. v. Coty, supra, 264 U.S. at pages 368, 369, 44 S.Ct. at page 351, 68 L.Ed. 731. Under these circumstances the plaintiff is entitled to injunctive protection against its use by the defendant upon his changed plugs. Since, as the court found, defendant's spark plugs are no longer "Champion" plugs, they should not be sold bearing the original trade-mark. Ingersoll v. Doyle, supra; 15 U.S.C.A. § 96.

■ In the third place, defendant packs each of his repaired spark plugs in an individual carton on the end of which is printed: "Repaired Spark Plug Make —— Size —— Type ——". In the blank after the word "Make" he stamps or prints plaintiff's trade-mark "Champion", and after the word "Type" the type number placed upon the enclosed spark plug by plaintiff when new. Since the court found that after being changed by the defendant's process the spark plugs "cannot now truthfully be referred to * * * as 'Champion' plugs of the type number marked thereon by plaintiff", it follows from the principles stated above that defendant is guilty of infringement when he stamps the trade-mark "Champion" on the carton, and of unfair competition when he stamps plaintiff's type number thereon. He should be enjoined from so doing. See Standard Oil Co. v. California Peach & Fig Growers, supra; Shaver v. Heller & Merz Co., 8 Cir., 108 F. 821, 65 L.R.A. 878; Wolf Bros. & Co. v. Hamilton Brown Shoe

Co., 8 Cir., 206 F. 611, 616, affirmed, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Queen Mfg. Co. v. Isaac Ginsberg & Bros., Inc., 8 Cir., 25 F.2d 284. Such a decree will not prevent the defendant from using his own trade-marks or type numbers, nor from printing a truthful explanatory statement as to the origin of the plugs upon the cartons.

The decree should be so modified as to enjoin the sale by defendant of "repaired" spark plugs manufactured by plaintiff without first removing plaintiff's trade-mark therefrom and to enjoin defendant from selling such "repaired" spark plugs in cartons on the end of which plaintiff's trade-mark and type numbers have been stamped or printed, and it is so ordered. Otherwise that part of the decree appealed from is affirmed, and the case is remanded for further proceedings in conformity with this opinion.

Modified and affirmed.